**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SPORTSCASTR INC.<br>(d/b/a PANDA INTERACTIVE),<br><br>*Plaintiff,*<br><br>v.<br><br>GENIUS SPORTS LTD.,<br><br>*Defendant.* | Civil Action No. 2:23-cv-471-JRG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**
**CONCERNING OR RELATED TO SPORTRADAR**

Plaintiff SportsCastr Inc. ("PANDA") moves to compel Genius Sports Ltd. ("Genius") to produce highly relevant information concerning its relationship with a key competitor (Sportradar) of ***both*** PANDA and Genius in the video-streaming space. Sportradar AG and Sportradar Group AG are also defendants in another co-pending related matter and, not surprisingly, are also refusing to produce any of this information.

Among other documents, Genius is shielding a highly relevant settlement agreement ("Agreement") between it and Sportradar. Publicly available information demonstrates the Agreement is relevant to multiple issues in this case, including the value of the patented technology and the hypothetical negotiation analysis for damages. Specifically, public information indicates the agreement has terms concerning the timely access (and required latency) to live sporting event data between these two competitors for specific sport leagues. These terms likely correspond to the relevant markets and the benefits Genius and Sportradar receive by infringing the Asserted Patents. This type of information is crucial to assist PANDA in its damages analysis. PANDA also believes the terms of the agreement will likely implicate other aspects of the case as well.

Genius has not and cannot plausibly allege that it does not have this information or that it would be overly burdensome to produce it. Nor could it—the Agreement itself is likely a single document (or series of documents). Further, information will likely be confined to a narrow time period and key custodians. Importantly, other information concerning Genius's and Sportradar's relationship should have already been collected and produced since competition in the relevant market is highly relevant to damages.

Genius's only argument for refusing to produce the Agreement is relevance. Public information disproves that assertion, and regardless, Genius is not the gatekeeper of what is or is

not relevant. An agreement between two key competitors (and defendants in pending related cases) concerning the Accused Products and subject matter relevant to this litigation is highly relevant and discoverable. Genius should produce this information without any further delay.

## I. BACKGROUND

This case involves PANDA's patented technologies that revolutionized, and have become increasingly adopted in, the field of live video streaming, including sporting events, concerts, and product promotions, over the internet in real-time or near real-time to multiple viewers across the network. First Am. Compl. ¶ 2 (filed Sept. 4, 2024) (Doc. #43). PANDA's technology provides for low-latency and synchronized distribution of content to large numbers of subscribers, providing foundational technology that enables products and services such as Watch & Bet sports (e.g., live odds and wagering while watching an event) among other services. *Id.* ¶ 1.

### A. The Genius and Sportradar Agreement

Genius is a direct competitor of PANDA that provides video streaming software and systems that, without authorization, implement PANDA's patented technologies, including Genius's LiveData, LiveTrading, Genius Trading Services, BetVision, and In-Play MultiBet. *Id.* ¶ 17. Sportradar is likewise a direct competitor in this same field and defending substantially similar allegations of infringement by PANDA before this Court. Genius and Sportradar have earned significantly increased profits, revenue, market capital, and market share by their illegal and unauthorized use of PANDA's patented technology, resulting in PANDA losing sales and profits and suffering irreparable harm, including lost market share and goodwill. *Id.* ¶¶ 17-18. These allegations include Genius's and Sportradar's use of Accused Products to secure licensing agreements across several professional sports leagues, including soccer leagues such as the English Premier League, Football League, and Scottish Professional Football League.

In 2020, Sportradar sued Genius and Football DataCo ("FDC") in the United Kingdom ("UK Suit"). The UK Suit concerned FDC's exclusivity agreement with Genius to collect data and statistics to sell to bookmakers for live or in-play betting. According to the UK Suit, Genius and FDC created an unassailable monopoly that Genius used to shut out rivals and exploit its customers.[1] Statistics for live sport events are a component in many systems that infringe PANDA's patented technology—including receiving that data in a timely manner for live events. For example, if the statistics are delayed, it affects the ability to view the events and benefit from the data. Such a delay can make services and products like "Watch & Bet" infeasible since the data may be outdated. Because of the nature of the facts and allegations at issue in the UK Suit, the UK Suit bears a significant relationship to products and features that are directly implicated in this litigation.

Based on public information, the licensing agreement from FDC permitted Genius to be the only supplier of live statistics for the sporting matches at issue (e.g. soccer games). *Id.* Genius separately sued Sportradar in 2021 for unlawfully dispatching "scouts" to relay live information from soccer matches, and unlawfully acquiring and using trade secrets. *Id.* Sportradar and Genius settled their dispute midtrial in October 2022.[2] Both companies issued statements noting only that Genius would maintain the exclusive right to provide ***low latency*** Official FDC betting data rights through 2024, and Sportradar would agree to refrain from unofficial in-stadia scouting of Premier League, Football League, and Scottish Professional Football League matches, and Sportradar purchased a sublicense from Genius for a ***delayed feed*** to be marketed as the Official FDC

---

[1] *See* https://www.law360.com/articles/1536855 (published Oct. 4, 2022; last accessed Aug. 27, 2024).

[2] *See* https://www.law360.com/articles/1539641/betting-cos-settle-soccer-ip-dispute-midtrial (published Oct 14, 2022; last accessed Aug. 27, 2024).

Secondary Feed, through 2024.[3]

As gleaned from public sources, the Agreement relates to who does (and does not) obtain low latency data feeds for their products for these leagues. Since low latency is one of the benefits both Genius and Sportradar obtained from infringing the Asserted Patents, an agreement reflecting how that type of performance is valued amongst competitors is highly relevant in this case. However, the remaining terms of their settlement agreement were not made public. Those additional terms could implicate factors relevant to PANDA's damages analysis such as: whether any agreement is limited to just those leagues; does the Agreement set forth a relationship in other areas; how relevant markets are defined, among others. PANDA should not be foreclosed from this discovery or take Genius's word for what the agreement allegedly shows.

**B. Genius's Refusal to Provide Discovery**

On March 26, 2024, PANDA identified categories of documents that Genius should produce as relevant to this action pursuant to the Court's Discovery Order § 3(b) (Doc. #25). PANDA specifically requested:

> **CATEGORY NO 57.**
>
> All documents, things, communications, and agreements with any of Your competitors or potential competitors, including but not limited to Sportradar AG, Sportradar US LLC, Sportradar Solutions LLC, Sportradar Group AG, or any of their affiliates or predecessors.

PANDA also served a similar interrogatory on this issue:

> **INTERROGATORY NO. 5.**
>
> Identify every agreement to which you are a party that relates to the development, creation, manufacture, distribution, importation, license, sale, acquisition, transfer, installation, or use of each Accused Product. Your response to this Interrogatory should include identification of all agreements relating to the Accused Products, the identity of the parties

---

[3] *See* https://investors.sportradar.com/news-releases/news-release-details/sportradar-settles-litigation-genius-sports-and-fdc (published Oct. 11, 2022; last accessed Aug. 26, 2024); *see also* https://www.geniussports.com/newsroom/genius-sports-statement-following-settlement-of-litigation-with-sportradar/ (published Oct. 10, 2022; last accessed Aug. 27, 2024).

to the agreement and the date of its execution, and the identity of the persons most knowledgeable about such agreements.

At a July 11 meeting between counsel, PANDA raised that part of its document requests concerned the UK Suit, and Genius stated it would consider PANDA's request. The parties met again on July 23. On August 23, Genius objected to producing the Agreement or any related information on relevance grounds—specifically, the UK Suit allegedly related to data for sporting events outside of the US and did not involve patents. The parties met and conferred a final time on September 6, during and after which Genius reaffirmed it would not produce the Agreement or related information based on relevance.

## II. ARGUMENT

"The rules of discovery are accorded a broad and liberal application to affect their purpose of adequately informing litigants in civil trials." *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620634, at *1 (E.D. Tex. Apr. 27, 2018) (citing *Herbert v. Lando*, 441 U.S. 153, 176 (1979)). "The party requesting discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable." *Id.* (citing Fed. R. Civ. P. 37; *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)). PANDA "is entitled to discover 'any nonprivileged matter that is relevant to [its] claim or defense and proportional to the needs of the case.'" *Seagen Inc. v. Daiichi Sankyo Co., Ltd.*, No. 2:20-CV-00337-JRG, 2021 WL 3620428, at *1 (E.D. Tex. Apr. 19, 2021).

Genius's argument that these documents are irrelevant is without merit. The subject matter of the suit and public information indicate the contrary—that the products at issue are likely to be the same prodcuts at issue in this case. At the very least, the subject matter of those suits—including agreements concerning the division of live sports data of the kind that is used for accused features like Watch & Bet prodcuts—implicates the Accused Products here. Genius and

Sportradar each leveraged technology incorporating PANDA's patents to secure licensing agreements with various entities, including the English Premier League, Professional League, and Scottish League.[4] Litigation documents, including the Agreement, likely demonstrate how Genius and Sportradar defined, described, and marketed their products. How they differentiated their products over competitors, especially the Accused Products and/or technology implementing PANDA's patents to secure licensing agreements with sports leagues (for which PANDA directly competed for contracts) is relevant to Genius's infringement and PANDA's damages analysis.

Even if the UK Suit and Agreement did not directly concern patents for the Accused Products—which PANDA believes they do—this Court has recognized discovery is not limited to Accused Products. In *Athalonz LLC v. Under Armour, Inc.*, the Court found sales data of unaccused products could be relevant to several *Georgia-Pacific* factors, including factors eight, nine, and eleven. No. 2:23-CV-00193-JRG, 2014 WL 1744064, at *4 (E.D. Tex. Apr. 22, 2024) (citing *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y. 1970)). PANDA has met the "proportionality" threshold the Court found lacking in *Athalonz* by establishing that the UK Suit directly concerns licensing agreements related to Genius's and Sportradar's use and leveraging of products implementing PANDA's patented technology.

The Agreement (as well as other documents related to it, the litigation, or concerning

---

[4] While these leagues exist outside of the U.S., broadcasting of league games in the U.S. generates significant revenue in the U.S. *See, e.g.*, https://knowillegal.com/epl-broadcasting-rights-the-battle-for-viewership-and-revenue/ ("Internationally, broadcasters like NBC Sports in the United States . . . have also secured rights to broadcast EPL matches. These broadcasters offer tailored content and coverage to cater to their local audiences, further driving the global reach of the EPL."); https://www.sportspromedia.com/news/premier-league-2022-23-nbc-sports-peacock-us-tv-viewership-ratings-figures/ ("In the US, NBC has shown the Premier League since 2013, with its latest six-year rights extension in 2021 worth around US$2.7 billion. Since becoming the competition's broadcast partner, NBC has presented 47 of the 50 most-watched live Premier League matches ever in the US across all platforms.").

PANDA two main competitors in this case) is also directly relevant to the issue of apportionment for calculation of damages. Specifically, Genius's infringement allowed it to gain an unfair market advantage. Part of PANDA's claim is that Genius and Sportradar used the Accused Products to secure licensing agreements with various sports leagues, including the leagues at issue in the UK Suit. Genius's own public statement says, "Genius Sports shall maintain the exclusive right to provide low latency Official FDC betting data rights through 2024. Sportradar [. . .] has purchased a sublicense from Genius Sports for a delayed feed to be marketed as the Official FDC Secondary Feed, through 2024." Transmission of the betting data subject to the litigation meets certain limitations of PANDA's Asserted Claims. The amounts that Genius and Sportradar pay to obtain betting data and live stream these events—and how they divided up those rights between themselves—will allow PANDA to apportion the value attributable to the inventions claimed in the Asserted Patents.

Finally, privilege does not protect any of Genius's documents concerning Sportradar, including this litigation. Any joint-defense privilege between Genius and Sportradar does not extend to communications "made a material issue in a judicial proceeding." *Conkling v. Turner*, 883 F.3d 431, 434 (5th Cir. 1989). Privilege cannot be used as a sword and a shield. *Id.* Genius shared emails with Sportradar to oppose PANDA's motion to amend infringement contentions and cannot now withhold communications with Sportradar related to those infringement contentions. Similarly, any aid Sportradar gave Genius in preparing its pending IPR petitions, or vice versa, is not privileged and is relevant to whether IPR estoppel should apply to Genius.

## III. CONCLUSION

For the reasons stated herein, PANDA requests an Order compelling Genius to produce all documents and communications concerning Sportradar within 14 days of the Court's Order.

Dated: September 13, 2024

Respectfully submitted:

By: /s/ *Matthew D. Wood*

Christopher C. Campbell (#444262 DC)
ccampbell@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
(202) 626-5578

Matthew D. Wood (#24110548)
mwood@kslaw.com
**KING & SPALDING LLP**
500 West 2nd Street
Suite 1800
Austin, TX 78701
(512) 457-2000

Greg Love (#24013060)
glove@cjsjlaw.com
Mark Siegmund (#24117055)
msiegmund@cjsjlaw.com
William Ellerman (#24007151)
wellerman@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES PLLC**
400 Austin Avenue, Suite 903
Waco, TX 87801
Telephone: (254) 633-3011

OF COUNSEL:

Britton F. Davis
**KING & SPALDING LLP**
1400 Lawrence Street, Suite 1900
Denver, CO 80202
(720) 535-2300
bfdavis@kslaw.com

Patrick Lafferty
Ryan A. Schmid
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
(202) 626-5578

rschmid@kslaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record as being served with a copy of the foregoing document via the Court's ECF service on September 13, 2024.

*/s/ Matthew D. Wood*
Matthew D. Wood

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for PANDA has complied with the meet and confer requirement in Local Rule CV-7(h). On September 6, 2024, counsel for PANDA met and conferred with counsel for Genius regarding the relief sought herein. The parties reached an impasse, and counsel for Genius indicated they opposed the relief sought.

*/s/ Matthew D. Wood*
Matthew D. Wood